## UNITED STATES DISTRICT COURT
## IN THE WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

| | |
|---|---|
| TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )    Case No. 4:19-CV-186-JHM ) |
| MUDD'S FURNITURE SHOWROOMS, INC., | ) ) |
| Defendant. | ) |

## **COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Travelers Casualty Insurance Company of America ("Travelers"), by counsel, and for its Complaint for Declaratory Judgment against the Defendant, Mudd's Furniture Showrooms, Inc. ("Mudd's"), states as follows:

## **NATURE OF THE CASE**

This is an action for declaratory judgment under a first-party property insurance policy ("Policy") issued by Travelers to Mudd's, Mudd's submitted a claim to Travelers under the Policy for property damage that reportedly occurred after a windstorm damaged the roofs of its building. Travelers brings this action to obtain declarations that: (1) Travelers is not liable under the Policy for certain items of property claimed by Mudd's as having been damaged that are either not covered or are excluded under the terms of the Policy; (2) the appraisal award of $844,290.37 replacement cost and $784,754.64 actual cash value is invalid and unenforceable to the extent that it includes amounts for repair or replacement of items that are not covered or are excluded under the terms of the Policy at issue; (3) the appraisal award is invalid because the umpire exceeded his authority and/or committed gross errors in resolving the differences between the parties' appointed appraisers; (4)

Mudd's breached the Policy by failing to timely notify Travelers of the loss and failing to preserve and protect the property from further damage; and (5) Travelers is not liable for the appraisal award to the extent it exceeds the amounts actually incurred by Mudd's for roof replacement.

## THE PARTIES

1. Travelers is incorporated in Connecticut and maintains its principal place of business in Connecticut. Travelers is licensed and authorized to underwrite and issue insurance policies in the State of Kentucky.

2. Mudd's is incorporated in Kentucky and maintains its principal place of business in Owensboro, Kentucky.

3. Travelers and Mudd's are citizens of different states, and Travelers is not a citizen of the forum state.

## JURISDICTION

4. This Court has jurisdiction over this case pursuant to 28 USC §1332 because the amount in controversy is in excess of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

5. Pursuant to 28 USC §1391, venue is proper in this District because the property that is the subject of this action is situated in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

*A.   The Travelers Policy*

6. Travelers issued an insurance policy providing first-party coverage to Mudd's, known as Policy No. 680-9D854458-17-42, for the policy period of April 1, 2017 to April 1, 2018 ("Policy"). Subject to its specific terms, conditions, limitations and provisions, the Travelers Policy extends coverage to Mudd's for its interest in covered property at the insured secondary

furniture showroom building located at 601 East 3rd Street, Owensboro, Kentucky 423032 ("Building").  A true and correct copy of the Policy is attached as Exhibit A.

      **B.**      ***The Loss***

      7.      Upon information and belief, on or about April 12, 2017, a windstorm damaged a portion of the three-tiered roofing system on the Building (the "Loss").

      8.      For seven weeks, Mudd's failed to report the Loss to Travelers, finally giving Travelers notice on June 8, 2017.  Upon information and belief, Mudd's took no steps to mitigate or repair the damage during this seven-week period, except to tarp one of the damaged roofs.

      9.      The excuse Mudd's gave Travelers for the late reporting of the Loss was that its roofing contractor advised against filing an insurance claim.

      10.      After receiving notice, Travelers assigned the Loss to an independent adjuster, Chris Holhubner, of Aspen Claims Service to investigate.

      11.      Mr. Holhubner inspected the Building on June 15, 2017 and confirmed that the metal on the top tier roof blew off and there was water damage in the rooms directly below this roof. Mr. Holhubner also observed pre-existing, long term water damage that did not appear Loss related.

      12.      Mr. Holhubner prepared and submitted an estimate to Travelers to replace the damaged roof, and to mitigate and repair the interior water damage. This estimate was in the amount of $80,966.38 replacement cost value ("RCV") and $57,025.46 actual cash value ("ACV").

      13.      After making some adjustments to the estimate, and after applying the Policy deductible of $10,000, Travelers issued an ACV payment to Mudd's on June 30, 2017 in the amount of $40,755.80.

14. Travelers heard nothing further from Mudd's for several months. Upon information and belief, Mudd's took no steps during this several month period to replace the roof, or to repair or mitigate the interior water damage.

### C. *Supplemental Claim*

15. On September 11, 2017 Travelers was contacted by Mudd's roofing contractor who advised that he found additional roof damage from flying debris to the second-tier rubber roof that was previously believed to be undamaged.

16. Travelers reinspected the Building on October 23, 2017, where, again, Travelers did not observe any water mitigation or repairs having been performed to the Building interior.

17. On October 24, 2017, Travelers issued a reservation of rights letter to Mudd's advising of the Policy duties requiring Mudd's to take all reasonable steps to protect the Building from further damage. Travelers also approved additional tarps for the roofs.

18. Travelers then hired an engineering consultant, EFI, to assess the additional claimed roof damage.

19. EFI reported that the second-tier rubber roof did appear to have debris damage to its membrane caused by airborne metal fragments from the roofs above.

20. Travelers revised its estimate to account for the additional roof damage, increasing its RCV estimate to $154,887.84 and ACV estimate to $114,910.64. Travelers made a supplemental payment of $64,154.85 to Mudd's on December 21, 2017.

### D. *Demand for Appraisal*

21. After making the supplemental payment, Travelers heard nothing further from Mudd's for nearly six months.

22. On June 12, 2018, Travelers received a demand for appraisal from Chuck Howarth

of The Howarth Group, who identified himself as Mudd's appraiser.

23. Upon information and belief, during this nearly six-month period, Mudd's took no steps to mitigate or repair the interior water damage.

24. The demand for appraisal was made pursuant to the following Policy provision:

> **2. Appraisal**
>
> If we and you disagree on the value of the, property, the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense or the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a. Pay its chosen appraiser; and
>
> b. Bear the other expenses of the appraisal and umpire equally. If there is an appraisal, we will still retain our right to deny the claim.

25. After receiving the demand for appraisal, Travelers notified Mudd's on June 18, 2018 that it needed further information on what damages Mudd's sought to have appraised.

26. Howarth then provided Travelers with his damages estimate which included an interior damage scope that essentially consisted of a gut rehab of the Building interior for an amount in excess of $560,000 ("Howarth interior estimate").

27. Travelers notified Howarth on August 3, 2018 that his interior estimate implicated coverage issues that were beyond the authority of the appraisal panel to resolve, and that Travelers was proceeding with appraisal under a full reservation of its right to deny coverage per the appraisal clause. A true and correct copy of this letter is attached as Exhibit B.

28. After Travelers' appointed appraiser, David Dunn, reported that his inspection of the Building revealed damages that appeared unrelated to the Loss, Travelers notified both Mudd's and Howarth by letter dated November 20, 2018 that Travelers only agreed to appraise the damages it could confirm were covered by the Policy ("undisputed damages"), and that Travelers was denying coverage for the balance of the Howarth interior estimate ("disputed damages"). A true and correct copy of this letter is attached as Exhibit C.

### E. The Appraisal

29. On March 26, 2019, nearly two years after the Loss, Dunn met with Howarth and the agreed upon umpire, Mike Ward, to exchange estimates and tour the Building.

30. Ward never inspected the Building before March 26, 2019.

31. Ward spent approximately 30 minutes touring the Building, the vast majority of which lacked power and was unlighted. Due to the lack of mitigation activity by Mudd's, the condition of the Building interior had deteriorated significantly in the intervening 23 months between the Loss and Ward's cursory inspection.

32. At the meeting, Dunn reminded Howarth and Ward that Travelers only agreed to appraise the undisputed damages.

33. Ward informed Dunn that his view of the appraisal process was to provide a value for *all* damages without regard to Policy coverage. Ward advised Dunn to rewrite his interior estimate to include the value of all damages without regard to Policy coverage,

34. Dunn advised Ward that it will be difficult for Travelers to apply its Policy coverage post-appraisal unless the appraisal award was segregated between disputed and undisputed damages.

35. On April 11, 2019, following the appraisal panel meeting, Travelers' counsel

notified Mudd's counsel that in order to apply its Policy coverage post-appraisal, Travelers required the appraisal award to be segregated between disputed and undisputed damages.

36. Counsel for Mudd's responded that he would advise "Mr. Mudd" of this request and "see if they can help facilitate". A true and correct copy of this email exchange is attached as Exhibit D.

### F. *Appraisal Award*

37. On October 23, 2019, Travelers received an appraisal award signed by Howarth and Ward for $844,290.37 RCV and $784,754.64 ACV ("award"). A true and correct copy of the appraisal award is attached as Exhibit E.

38. Despite the repeated requests by Travelers and Dunn to segregate the award between disputed and undisputed damages so that Travelers could apply its Policy coverages and pay any additional amounts owed, the award is a lump sum amount and not segregated.

39. The lump sum award is predicated on two estimates purportedly prepared by Ward, one for roofing and one for interior damages. True and correct copies of Ward's estimates are attached as Exhibits F and G, respectively.

40. Ward's interior estimate is not segregated between disputed and undisputed damages.

41. To assist Travelers in segregating the disputed and undisputed damages in the award, Dunn asked Ward for his "esx file" (this file contains the data, such as quantities, unit pricing etc.), used to create his interior estimate.

42. Ward refused to provide the esx file to Dunn. Despite his previous insistence that the appraisers include all observed damages in their estimates regardless of cause or coverage, Ward now claimed that his interior estimate and related award only includes damages specifically

related to the Loss.

43. Ward, however, never inspected the Building interior until March 26, 2019, nearly two years after the Loss. Ward could not have estimated the interior damages directly related to the Loss because the condition of the Building changed dramatically in the intervening 23 months during which no mitigation activities were performed by Mudd's.

44. After receiving the award, Travelers also requested that Mudd's provide all documentation relating to its actual costs incurred to replace the Building roofs so that Travelers could confirm what was actually spent.

45. Mudd's supplied Travelers with a document labeled "Estimate/Contract" from CMS Roofing dated 1/18/18 reflecting a "job total" price of $154,886.87 for all the work set forth in the Travelers' supplemental estimate. Mudd's did not provide Travelers with sufficient information to determine what amount it actually paid CMS for roof replacement but, upon information and belief, Mudd's spent far less than the amount included in the award.

46. Ward's roofing estimate, the full amount of which was included in the award, exceeds the costs actually incurred by Mudd's in an amount yet to be determined.

## COUNT I
### (Declaratory Relief –Appraisal Award Invalid and Unenforceable)

47. Travelers incorporates by reference and realleges paragraphs 1 through 47 inclusive, as though fully set forth herein.

48. The Policy's appraisal provision is limited to the resolution of any dispute between Travelers and Mudd's should they "fail to agree on the amount of loss." The appraisal provision does not provide a mechanism for resolving issues of coverage or liability under the Policy.

49. The appraisal provision contains a reservation of rights that if there is an appraisal

"we [Travelers] will still retain our right to deny the claim."

50. Mudd's made its appraisal demand over one year after the Loss, and after failing to take reasonable steps after the Loss to mitigate its interior Building damages.

51. Mudd's appraisal demand was based on the Howarth estimate which failed to distinguish between damage directly related to the Loss, and damage caused by mold, rot, decay and other excluded causes that pre-dated the Loss or were caused by Mudd's failure to mitigate its damages after the Loss.

52. Travelers repeatedly insisted that the scope of the appraisal be confined to the undisputed damages (i.e., those confirmed as covered by Travelers) or, alternatively, that the award be segregated between disputed and undisputed damages.

53. Travelers repeatedly reserved all of it rights in connection with the scope of the appraisal.

54. Ward and Howarth ignored Travelers requests to limit the appraisal and/or segregate the award between disputed and undisputed damages.

55. Ward refused to provide Dunn with his esx file that would enable Travelers to determine the value of the disputed and undisputed damages included in the award and apply its Policy coverage.

56. The award is invalid and unenforceable to the extent it fails to segregate between disputed and undisputed damages and, therefore includes damages and amounts not covered by the Policy and for which Travelers has denied coverage.

57. The roofing portion of the award is also invalid and unenforceable. Although Mudd's had already replaced the damaged roofs at the time of the appraisal, neither Howarth nor Ward determined the amount actually spent by Mudd's which, of course, would be the best

evidence of the replacement cost value of the roofs.

58. The Policy only affords the umpire the authority to resolve "the differences" submitted to the umpire by the two appraisers, Dunn and Howarth.

59. Dunn's roofing estimate submitted to the umpire was $104,886.92. Howarth's roofing estimate submitted to the umpire was $239,061.91.

60. Ward, ignored Mudd's actual roofing costs and the estimates of both appraisers, and instead wrote his own roof roofing estimate for $283,827, the full amount of which was included in the award.

61. Ward exceeded his authority by writing his own estimate that exceeded the "differences" submitted to him by Howarth and Dunn.

62. Ward also committed a gross error by writing his own estimate without determining the amounts actually spent by Mudd's in replacing the roofs.

63. The award is invalid and unenforceable to the extent the umpire exceeded his authority and/or committed gross errors of judgment.

64. A controversy exists between Travelers and Mudd's concerning the validity and enforceability of the award and/or Travelers' liability under the Policy for the award.

65. Declaratory relief is therefore appropriate to declare the parties' rights and obligations under the Policy.

WHEREFORE, Plaintiff, TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, prays that this Honorable Court enter judgment in its favor and against the Defendant, MUDD'S FURNITURE SHOWROOMS, INC., and finding and declaring the rights of the parties as sought herein, including that:

A. Travelers is not liable for that portion of the award that includes damages not

covered by the Policy ("disputed damages");

B. The award does not determine the amount of Travelers' liability under the Policy for the disputed damages;

C. The award, in whole or in part, is invalid and unenforceable because the award includes the disputed damages and/or amounts that not covered by the Policy;

D. The award, in whole or in part, is invalid and unenforceable as the umpire exceeded his authority under the Policy's appraisal clause and/or committed gross errors of judgment;

E. For Travelers costs herein and for such other and further relief as the Court deems just and equitable.

## COUNT II
### (Declaratory Relief – Policy Exclusions/Limitations)

66. Travelers incorporates by reference and realleges paragraphs 1 through 65 inclusive, as though fully set forth herein.

67. The Policy contains several exclusions/limitations applicable to the interior Building damages claimed by Mudd's pursuant to the Howarth estimate.

68. The Policy contains exclusions for loss or damage caused by or resulting from wear and tear, rust, corrosion, fungus, decay, deterioration, wet or dry rot, and mold.

69. The Policy excludes loss or damage caused by or resulting from faulty, inadequate or defective maintenance.

70. The Policy excludes loss or damage caused by or resulting from continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

71. The Policy excludes loss or damage caused directly or indirectly by the neglect of an insured to use reasonable means to save and preserve property from further damage at and after

the time of loss. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

72. The Policy limits coverage for Building damages caused by rain, snow, sleet, or ice, unless the Building first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, or ice, enters.

73. The disputed damages are subject to the Policy exclusions and limitations.

74. Travelers denied coverage for the disputed damages that were subject to the Policy exclusions and limitations.

75. A controversy exists between the parties concerning Policy coverage for the disputed damages for which Travelers denied coverage.

76. Declaratory relief is therefore appropriate to declare the parties' rights and obligations under the Policy.

WHEREFORE, Plaintiff, TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, prays that this Honorable Court enter judgment in its favor and against the Defendant, MUDD'S FURNITURE SHOWROOMS, INC., and finding and declaring the rights of the parties as sought herein, including that Travelers is not liable under the Policy for the disputed damages and for such other and further relief to which Travelers may show itself justly entitled.

## COUNT III

### (Declaratory Relief- Breach of Policy Duties)

77. Travelers incorporates by reference and realleges paragraphs 1 through 76 inclusive, as though fully set forth herein.

78. The Policy imposes on Mudd's certain "Duties in the Event of Loss or Damage" ("Duties").

79. The Duties require that Mudd's give Travelers "prompt notice of the loss or damage" and "take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim."

80. For seven weeks, Mudd's did not report the Loss to Travelers, finally giving Travelers notice on June 8, 2017. Mudd's did not provide any reasonable excuse for the late reporting of the Loss.

81. Upon information and belief, during these seven weeks between the Loss and notice to Travelers, Mudd's took no steps to mitigate or repair the interior damage, except to tarp one of the damaged roofs.

82. During the 23 months between the Loss and the March 26, 2019 appraisal panel meeting, Mudd's took no reasonable steps to repair or mitigate the interior Building damage which became progressively worse and more extensive.

83. The interior Building damages reflected in the award are not the same damages that existed on the date of Loss.

84. Mudd's late notice of loss and failure to take all reasonable steps to preserve and protect the Building interior following the Loss, caused substantial prejudice to Travelers.

85. Mudd's late notice of loss and failure to take all reasonable steps to preserve and protect the Building interior following the Loss, were a breach of the Policy Duties, were prejudicial to Travelers, and relieve Travelers of any liability for the disputed damages in the award.

86. A controversy exists between the parties concerning Mudd's breach of the Policy Duties.

87. Declaratory relief is therefore appropriate to declare the parties' rights and obligations under the Policy.

WHEREFORE, Plaintiff, TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, prays that this Honorable Court enter judgment in its favor and against the Defendant, MUDD'S FURNITURE SHOWROOMS, INC., and finding and declaring the rights of the parties as sought herein, including such other and further relief to which it may show itself justly entitled.

## COUNT IV
### (Declaratory Relief – Roof Valuation)

88. Travelers incorporates by reference and realleges paragraphs 1 through 87 inclusive, as though fully set forth herein.

89. The Policy's Loss Payment clause provides that the value of covered property will be determined at replacement cost if actually replaced.

90. The Policy's Loss Payment clause further specifies that Travelers' liability under the Policy on a replacement cost basis will not exceed the "the amount actually spent that is necessary to repair or replace the lost or damaged property."

91. Upon information and belief, Mudd's spent far less to replace the roofs than the amount included in the award for roof replacement.

92. Travelers liability under the Policy's Loss Payment Clause is limited to the amount actually spent by Mudd's for roof replacement due to the Loss.

93. A dispute exists concerning the application of the Loss Payment clause and Travelers liability under the Policy for roof replacement.

94. Travelers seeks a declaration that its liability under the Policy is limited to the amounts actually incurred by Mudd's for roof replacement following the Loss.

95. A controversy exists between the parties concerning Policy coverage for the roof

replacement costs.

96. Declaratory relief is therefore appropriate to declare the parties' rights and obligations under the Policy.

WHEREFORE, Plaintiff, TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, prays that this Honorable Court enter judgment in its favor and against the Defendant, MUDD'S FURNITURE SHOWROOMS, INC., and finding and declaring the rights of the parties as sought herein, including such other and further relief to which it may show itself justly entitled.

Respectfully submitted,

SCHILLER BARNES MALONEY PLLC

*/s/ Michael S. Maloney*
Michael S. Maloney
Stephen C. Keller
401 West Main Street, Suite 1600
Louisville, KY 40202
PH: (502) 625-1670
FAX: (502) 779-9328
mmaloney@sbmkylaw.com
skeller@sbmkylaw.com
*Counsel for Plaintiff, Travelers Casualty Insurance Company of America*

Of counsel:

Matthew S. Ponzi
Foran Glennon Palandech Ponzi & Rudloff, PC
222 North LaSalle Street, Suite 1400
Chicago, IL 60601
(312) 863-5070
mponzi@fgppr.com